IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FLORENCE C. HOWARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-16-1117-STE |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES and REMANDS** the Commissioner's decision for further administrative findings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-20). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

In evaluating Plaintiff's claims of disability, the ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 25, 2012, the alleged onset date. (TR. 16). At step two, the ALJ determined that Ms. Howard had the following severe impairments: lumbar back pain and spinal stenosis. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 17).

At step four, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional stooping, kneeling, and crouching." (TR. 17). With this RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a sales associate. (TR. 18). Even so, the ALJ proceeded to step five. There, the ALJ presented several limitations to a

vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 35-36). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 36-37). The ALJ adopted the testimony of the VE and concluded that Ms. Howard was not disabled based on her ability to perform the identified jobs. (TR. 19-20).

### III.   ISSUES PRESENTED

On appeal, Plaintiff alleges error: (1) in the evaluation of a mental impairment, (2) in the evaluation of a treating physician's opinion, and (3) in the credibility analysis.

### IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### V.   THE ALJ'S EVALUATION OF DR. MALDONADO'S OPINION

From August 16, 2013 to December 23, 2014, Dr. Juan Maldonado treated Plaintiff for back pain. (TR. 372-383, 390-404). As alleged by Ms. Howard, the ALJ erred in his evaluation of Dr. Maldonado's opinion.

3

## A. ALJ's Duty to Assess a Treating Physician's Opinion

An ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must: (1) assess the opinion under a series of factors[2] and give "good reasons" for the weight assigned to the opinion. *Id.* at 1332. "The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Id.* If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

---

[2] These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Allman*, at 1331-1332; 20 C.F.R §§ 404.1527, 416.927.

### B. Dr. Maldonado's Opinion

On April 7, 2014, Dr. Maldonado completed a "Medical Opinion Regarding Residual Functional Capacity" where the physician documented Ms. Howard's physical impairment, including her various work-related abilities and limitations. (TR. 383). There, the physician stated that since 2012 Ms. Howard had been suffering low back pain caused by a herniated disc impinging on her left side. (TR. 383). With the impairment, Dr. Maldonado opined that Plaintiff had the ability to:

- stand and walk less than 2 hours during an 8-hour day,
- sit for 2 hours during an 8-hour day, and
- occasionally and/or frequently lift and/or carry less than 10 pounds.

(TR. 383). Dr. Maldonado also stated that Ms. Howard's impairment: (1) was likely to interfere with her ability to maintain attention and concentrate for 25% or more of her workday and (2) would likely cause her to be absent from work more than 3 days per month. (TR. 383).

### C. Error in the ALJ's Consideration of Dr. Maldonado's Opinion

The ALJ acknowledged Dr. Maldonado as Plaintiff's treating physician and recognized the April 7, 2014 RFC assessment as "opinion evidence," but only mentioned limitations in the opinion related to Plaintiff's ability to sit, stand, and walk. (TR. 18). Ultimately, the ALJ accorded the opinion "little weight," citing three reasons:

- "normal" neurological functioning noted during 13 office visits,
- an absence of "significant positive finding[s] related to [Plaintiff's] back," and

- Dr. Maldonado failed to recommend any treatment for Plaintiff aside from pain medication.

(TR. 18). Plaintiff argues that the ALJ's reasons for discounting Dr. Maldonado's opinion lack substantial evidence. (ECF No. 16:10-16). The Court agrees.[3]

First, the ALJ cites "normal" neurological functioning during 13 office visits with Dr. Maldonado. (TR. 18). As part of Dr. Maldonado's treatment notes, the physician completes a checklist of symptoms and findings for various areas of the patient, including an area for "Neuro." (TR. 390). In the "Neuro" column, "normal" findings are present if the patient has normal cerebellar and cortical function, gait, and deep tendon flexes, and grossly normal cranial nerves 2-12. (TR. 390). But "normal" neurological findings, as that term is used in the physician's report would not account for Ms. Howard's complaints of lower back pain, which Dr. Maldonado documented during every office visit. (TR. 373, 374, 376, 378, 380, 382, 391, 393, 395, 396, 397, 399, 401, 402, 403). And although the majority of the office visits reported "normal" neurological findings, the August 23, 2013 report noted "abnormal" neurological findings in Plaintiff's neck and low spine and positive straight leg-raise findings. (TR. 374).

---

[3] Ms. Howard makes a passing reference to the fact that "the ALJ skipped the first step [in determining whether the opinion was entitled to "controlling weight"], only determining Dr. Maldonado's opinion warranted little weight." (ECF No. 16:12). But she does not further pursue this allegation as a separate point of error. In any event, the Tenth Circuit Court of Appeals has indicated that no error exists based on the ALJ's failure to explicitly discuss whether an opinion is entitled to controlling weight, when it is apparent from the record that the ALJ had given the opinion less than controlling weight, and continued through the remainder of the analysis. *See Andersen v. Astrue*, 319 F. App'x 712, 720, n. 4, 721 (10th Cir. 2009).

Next, the ALJ's references to "no significant positive findings related to the [Plaintiff's] back" and no "recommend[ation] [for] laboratory testing or treatment other than the prescription of medication" were also inaccurate and not supported by the record. On every single office visit, Dr. Maldonado noted Ms. Howard suffered from back pain. (TR. 373, 374, 376, 378, 380, 382, 391, 393, 395, 396, 397, 399, 401, 402, 403). The physician also noted that Ms. Howard experienced pain with walking and should avoid heavy lifting. (TR. 380, 394).

And after nine months of office visits documenting the back pain, Dr. Maldonado ordered an MRI of Plaintiff's lumbar spine. (TR. 393). The MRI showed:

- "severe bilateral facet arthropathy" in conjunction with a bulging disc at L4-5 which resulted in central canal stenosis,

- slight degenerative anterolisthesis and moderate bilateral facet arthopathy with small facet joint effusion at L3-4,

- and loss of lordotic curvature which may indicate muscle spasm.

(TR. 384). After reviewing the MRI results, Dr. Maldonado noted an additional diagnosis of spinal stenosis and degenerative disc disease and referred Plaintiff to neurosurgeon Dr. David Pagnanelli. (TR. 395). And in addition to the neurosurgeon referral and MRI and prescription medication, Dr. Maldonado also referred Plaintiff for physical therapy, prescribed back exercises, and gave Ms. Howard Depo-Medrol injections to treat the pain. (TR. 382, 391, 393, 395, 397, 401, 402).

In defense of the ALJ's decision, the Commissioner lists various objective findings in the record which she contends would support the RFC determination. (ECF No. 17:3-10). For example, Ms. Berryhill relies on:

- findings from other physicians regarding good range of motion in Plaintiff's back, and normal neurological functioning,

- Dr. Maldonado's findings of "normal neurological functioning,"

- Dr. Pagnanelli's findings of "normal lower extremity strength and reflexes" and "normal gait and station,"

- The ALJ's finding that Ms. Howard was "stable on current medication," and

- Findings from state agency physicians that Plaintiff could perform light work.

(ECF No. 17:3-10). In sum, the Commissioner states: "Since those opinions were supported by substantial evidence, for the reasons discussed above, the ALJ's decision in this regard was supported by substantial evidence, and Plaintiff's contention that the ALJ's RFC was not supported by substantial evidence, . . . is not persuasive." (ECF No. 17:9-10).

Ms. Berryhill's argument is unconvincing for two reasons. First, the ALJ did not rely on the evidence cited by Defendant to reject Dr. Maldonado's opinion. *See* TR. 18. Accordingly, the Court rejects Defendant's argument because the Court is not permitted to supply *post-hoc* rationales to uphold the Commissioner's decision. *See Haga v. Astrue,* 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Second, Plaintiff's argument regarding a lack of substantial evidence to support the RFC is premised on the fact that the ALJ failed to properly evaluate Dr. Maldonado's opinion. (ECF No. 16:16). Although Defendant argues that the RFC determination is based

8

on substantial evidence, the Court cannot reach the same conclusion in the absence of a re-evaluation of Dr. Maldonado's opinion. Only after Dr. Maldonado's opinion has been re-evaluated utilizing the proper legal framework with findings supported by the record can a determination be made regarding whether the RFC is supported by substantial evidence.

## VI. THE ALJ'S EVALUATION OF PLAINTIFF'S ANXIETY

Ms. Howard alleges error in the evaluation of her anxiety. (ECF No. 16:16-20). The record contains evidence that Plaintiff suffered from anxiety and was prescribed medication. (TR. 289, 291, 293). Based on these records, Ms. Howard contends that the ALJ erred in failing to evaluate the impairment utilizing the regulatory special technique promulgated by the Commissioner for evaluation of mental impairments. (ECF No. 16:16-20). The Court agrees.

### A. The ALJ's Duty to Evaluate a Mental Impairment

When assessing a plaintiff's mental impairment, the ALJ is required by regulation to apply a "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. The first step in that technique is to "evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* at §§ 404.1520a(b)(1), 416.920a(b)(1). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.* at §§ 404.1508, 416.908. Once a medically determinable impairment is found, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." *Id.* at §§

9

404.1520a(b)(2), 416.920a(b)(2). The ALJ does this by rating the claimant's limitations in "four broad functional areas," which are: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* at §§ 404.1520a(c)(3), 416.920a(c)(3). These ratings are then used to determine the severity of the mental impairment(s). Under the regulations,

> the [ALJ's] written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the [four broad] functional areas[.]

*Id.* at §§ 404.1520a(e)(2), 416.920a(e)(2).

### B. Error in Failing to Properly Evaluate Ms. Howard's Mental Impairment

The ALJ erred by failing to properly evaluate whether Ms. Howard suffered from a mental impairment. The record established that Plaintiff had been diagnosed with anxiety and had been taking prescription medication to treat the condition. (TR. 289, 291, 293). This evidence was sufficient to establish the existence of a medically determinable mental impairment. *See George v. Astrue*, 451 F. App'x 767, 768 (10th Cir. 2011) (sufficient evidence to establish medically determinable mental impairment where claimant was diagnosed with anxiety and treated with drugs). Accordingly, the ALJ was required to evaluate the anxiety utilizing the "special technique." *See* 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).

The Commissioner argues that no error existed because other providers did not diagnose a mental impairment and examinations revealed that Plaintiff was "alert and

oriented, and demonstrated a normal, appropriate mood; a normal, appropriate, calm affect; appropriate cooperative behavior; effective communication; intact memory; and normal fund of knowledge." (ECF No. 17:12) (citations omitted). It is entirely possible that on remand, the ALJ will find that Ms. Howard's anxiety has no impact on her ability to work. But because the ALJ has not made *any* factual findings—one way or the other— about the existence, severity, or functional limitations, if any, imposed by Ms. Howard's anxiety, the Court cannot jump to this conclusion. This issue is for the fact-finder—the ALJ—to resolve. *See Allen v. Barnhart,* 357 F.3d 1140, 1144 (10th Cir.2004) ("[A]s a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and, accordingly, we are not in a position to draw factual conclusions on behalf of the ALJ.") (quotations omitted).

Simply put, when presented with evidence of a medically determinable mental impairment, the ALJ failed to: (1) mention the mental impairment, (2) apply the "special technique," or (3) provide for any mental limitations in the RFC. These failures constitute error as a matter of law. *See Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991) ("Since the record contained evidence of a mental impairment that allegedly prevented claimant from working, the Secretary was required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly.") (citation omitted); *George,* at 768-769 (ALJ erred in failing to evaluate plaintiff's mental impairment utilizing the "special technique" when presented with evidence that plaintiff suffered from anxiety and had been prescribed medication).

## VII. ERROR IN THE CREDIBILITY ANALYSIS

Plaintiff alleges that the ALJ erred in evaluating her credibility. According to Ms. Howard, the ALJ: (1) evaluated credibility in a boilerplate manner, (2) improperly relied solely on daily activities as a basis to support the credibility determination, and (3) failed to link his conclusions to specific evidence of record. (ECF No. 16:20-24). Ms. Howard is correct.

### A. ALJ's Duty to Evaluate Allegations of Pain/Credibility

The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of. . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); SSR 96-7p, 1996 WL 347186, at *1 (July 2, 1996). The ALJ is required to closely and affirmatively link his credibility findings to substantial evidence in the record. *See Wilson*, 602 F.3d at 1144. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Id.* (internal quotation marks omitted). In *Wilson*, the Tenth Circuit Court of Appeals set forth a list of factors that should be considered in assessing the credibility of subjective complaints, including:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation marks omitted); *see also* SSR 96-7p, 1996 WL 473186, at *3.

It is not enough for the ALJ to simply recite the factors, although he need not undergo a formalistic factor-by-factor recitation of the evidence. *Id.* at *4; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). However, in considering the factors, the ALJ must "set[ ] forth the specific evidence he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The ALJ must give specific reasons for the credibility finding, and must be sufficiently specific regarding the weight given to the individual's statements and the reasons for that weight. SSR 96-7p at *4. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

### B. Plaintiff's Allegations of Pain

At the hearing, Plaintiff testified regarding her back impairment and related pain. (TR. 29-33). According to Ms. Howard, she suffered from pain which allowed her to only:

- Sit for one hour at a time, but even then, she would need to move around or change positions in an attempt to relieve the pain,
- Stand for one hour at a time, and
- Lift one gallon of milk, but even doing that caused back pain.

(TR. 31-32). Ms. Howard also testified that she could not walk "too far" because walking caused numbness in her right leg, which, in turn, caused her to fall. (TR. 29). Ms. Howard also stated that she was able to drive, cook, and clean. (TR. 30, 33).

## C. Error in the Credibility Evaluation

At step two, the ALJ determined that Ms. Howard suffered from severe impairments involving lumbar back pain and spinal stenosis. (TR. 16). In evaluating Plaintiff's credibility, the ALJ concluded that these severe impairments could reasonably be expected to cause Plaintiff's allegations of pain. (TR. 17). As a result, the ALJ had a duty to evaluate whether he believed Ms. Howard's statements regarding her pain and related limitations. *See* SSR 96-7p.

The ALJ recognized the criteria for evaluating Ms. Howard's pain, and stated: "The claimant estimated that she is limited to sitting for 60 minutes and standing 60 minutes, with additional limitations on walking, lifting and carrying." (TR. 17). Following this short summary, the ALJ stated: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (TR. 17). In support of this explanation, the ALJ relied only on Ms. Howard's daily activities which "include[d] driving, cooking, and washing dishes." (TR. 17).

Activities of daily living are relevant to a credibility analysis. *See* SSR 97-7p at * 3. However, daily activities alone would not support the ALJ's finding that Ms. Howard's testimony was not credible. *See Krauser v. Astrue*, 638 F.3d 1324, 1332-1333 (10th Cir. 2011) (discussing necessity of looking at claimant's actual activities and stating that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity") (internal quotation marks omitted); *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987) (finding that plaintiff's lifestyle

14

consisting of limited and sporadic activities "does not contradict a claim of disabling pain" and ALJ's citation of such daily activities did not indicate substantial evidence refuting plaintiff's credibility or claims of pain); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (finding that an "ALJ may not rely on minimal daily activities as substantial evidence" to determine that a claimant's claims of disabling pain are not credible).

Furthermore, the undersigned notes that the ALJ's assessment of Ms. Howard's daily activities was misleading. Although Plaintiff stated that she could drive a car, she did not state for how long, how often she drove, or whether doing so caused her any pain. *See* TR. 30. Regarding cooking and cleaning, Plaintiff testified that she cooked only once a day and the only cleaning she did was attempting to wash the dishes, which she rarely completed, because doing so caused her to sweat, get blurry vision, and fall or faint. (TR. 33). Thus, in addition to improperly relying solely on Ms. Howard's daily activities to support the credibility determination, the ALJ erroneously relied on a mischaracterization of those activities as well. *See Sitsler v. Astrue*, 410 F. App'x 112, 117 (10th Cir. 2011) ("an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations."); *Talbot v. Heckler,* 814 F.2d 1456, 1462, 1464 (10th Cir. 1987) (noting that the ALJ improperly based his conclusion that claimant could do light work on a mischaracterization of his activities).

Aside from his reliance on Plaintiff's daily activities, the ALJ cited no other evidence in discussing Ms. Howard's allegations of pain and related credibility. Absent the daily activities, all the Court is left with to review is the ALJ's boilerplate language rejecting Plaintiff's allegations, without a link to specific evidence of record. The Tenth Circuit Court

of Appeals has held that such a bare analysis is legally deficient and warrants reversal. See Hardman v. Barnhart, 362 F.3d 676, 679-681 (10th Cir. 2004).

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings consistent with this opinion.

ENTERED on July 7, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE